ARYA PERNELL 17801-035
USP MARION
P.O. BOX 1000
Marion, IL 62959
Plaintiff, pro se

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARYA MILAN PERNELL (AKA AARON PERNELL)<br>Plaintiff<br>V.<br>TRANSGENDER EXECUTIVE COUNCIL John Does #1-7 (FEDERAL BUREAU OF PRISONS), DAN SPROUL, Colette Peters, Ian Connors, Andre Matevousian, Medical Director John Doe #8 (FEDERAL BUREAU OF PRISONS)<br>Defendants | Case No. 3:23-cv-374-SPM<br><br>CIVIL RIGHTS COMPLAINT<br><br>PURSUANT TO <u>BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS</u> 403 U.S. 388 1971 AND 28 U.S.C. § 1331<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

This is a Civil Action filed by ARYA MILAN PERNELL, a federal prisoner in the care and custody of the Federal Bureau of Prisons ("FBOP") for damages, declaratory, and injunctive relief. This Complaint alleges the denial of medical care, deliberate indifference to a serious medical need and failure to protect from sexual abuse/harrassment in violation of the 8th Amendment of the United States Constitution. Additionally it alleges an equal protection violation afforded in the Amendment of the United States Constitution and discrimination under the rehabilitation Act of 1973.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of this action pursuant to the following provisions:
a. 28 U.S.C. § 1343 (a)(3), which grants jurisdiction to the district court of any action to recover damages or to secure equitable or other relief under an Act of

1

Congress providing of civil rights.

6. 28 U.S.C 1331, which authorizes original jurisdiction to the district court of all civil actions arising under the Constitution laws or treaties of the United States.

2. All listed defendants are Federal Bureau of Prisons employees. As such, this Court has jurisdiction over the defendants.

3. Venue is proper in this district court.

## Relevant STATUTORY

4. The Rehabilitation Act of 1973 protects individuals who have a physical or mental impairment.

5. Under the Rehabilitation Act, discrimination includes, among other things, the failure to make reasonable accomodations to the known physical or mental limitations of an otherwise qualified individual.

## PARTIES

6. ARYA MILAN PERNELL ("ARYA") is a Transgender Male to Female prisoner currently located at USP Marion. ARYA has been in the custody and care of the Federal Bureau of Prisons at all times alleged in this complaint. ARYA is the Plaintiff.

7. John Does #1-7 are members of FBOP Transgender Executive Council and are charged with overseeing and providing recommendations for the care of Transgender inmates in FBOP custody. Does # 1-7 names are currently unknown to ARYA and there may be more members that comprise the Transgender Executive Council ("TEC"). In such an event that there may be more members than presently known to ARya that comprise the TEC, ARYA will name any additional members as appropriate. These unknown named Does #1-7 are sued in their individual and official capacity both jointly and severally

2

8. Warden Dan Sproul is the current Warden at USP Marion and is employed by the Federal Bureau of Prisons. Defendant Sproul is charged with ensuring of the orderly running and safety of USP Marion. Defendant Sproul is sued in his official and individual capacity both jointly and severally.

9. Colette Peters is the FBOP director and is charged with implementing policies within the FBOP and general oversight of FBOP operations. Defendant Peters is sued in her individual and official capacity both jointly and severally.

10. Ian Connors is the FBOP Administrator for National inmate appeals submitted to him and providing remedy when appropriate, to said inmates. Defendant Connors is sued in his individual and official capacity both jointly and severally.

11. Andre Matevousian is the FBOP North Central Regional Director and is generally charged with responding to inmate appeals submitted in his region, and providing remedies when appropriate, to said inmates. Defendant Matevousian is sued in his individual and official capacity both jointly and severally.

12. John Doe #8 is the FBOP medical Director and is responsible for providing and authorizing medical care and treatment to inmates in the custody of the FBOP. John Doe #8 is sued in her individual and official capacity both jointly and severally.

## FACTS
### Generally

13. ARYA has identified as Transgender since 2016. ARYA declared herself as Transgender to FBOP staff in 2016 during her first year confined in the FBOP. On 1 September 2016 she was diagnosed by a psychologist as being a Male to Female Transgender. See Exhibit H8, H1

14. In April of 2019 Arya was diagnosed with Gender Dysphoria ("GD") in adolescents and adults. See Exhibit (H1)

3

15. In August of 2019, ARYA began her medical transition by undergoing female Hormone Therapy.

16. ARYA has been recognized by her peers and FBOP staff as being female. ARYA is documented to have a pronounced female appearance. ARYA wears make-up, female undergarments, and lives as a female as much as permitted in her environment. Due to Hormone Therapy, ARYA has developed "Secondary" female sex characteristics. See Exhibits (F1 through F29), (G1 through G5), (H15), and (E1)

17. ARYA, since beginning her Hormone therapy has reached hormone "goal" level in September of 2020. Even before that time she had already been living outwardly as a woman and consolidated her gender identity. See Exhibits E8, E9

## Confinement AND Medical Treatment

19. Because of ARYA's Appearance, ARYA has been subjected to unwanted sexual ~~advances~~ and attention from other inmates. ARYA was found to be the victim of three separate Prison Rape Elimination Act (PREA) incidents while at FCI Fairton, in NJ. See Exhibit (E2)(E9)

20. In one particular incident, an inmate was placed in SHU and transferred in relation to ARYA being found as the victim of a PREA incident at FCI Fairton.

21. Prior to Aryas transfer to USP Marion, ARYA and multiple institution staff communicated to the TEC that unwanted sexual advances were occurring. John Does #1-7 were notified of the above concerns
See Exhibit: (E-9) (E3)(E4)(E5)

22. While located at USP Marions' Residential Sex Offender Treatment Program (SOTP-R), there was instance whereupon an inmate was reported to SOTP-R staff for sexually inappropriate behavior towards ARYA. That inmate then moved from the treatment program unit.

4

23. While at FCI Fairton, ARYA notified Health services by email that ARYA could no longer live with male genetalia as ARYA inquired about voluntary castration.

25. In July of 2020, ARYA attempted self-castration. ARYA used a safety razor and cut open her scrotal sack fully exposing one testicle. ARYA had to be hospitalized for four and a half days to recover from the event.

26. During the Above event ARYA stated to medical personnel that she felt she either had to kill herself or attempt self surgery.

27. During ARYA's hospital stay, she was evaluated by a Dr. Harim Ghobrial-Sedky, MD, at Cooper University Medical Hospital.

28. It was Recommended by Dr. Ghobrial-Sedky in his report and relayed to an unknown federal liason and placed in ARYA's medical file that ARYA, "first and foremost needs assistance with resources and a plan for Gender reassignment surgery": see Exhibit H5

29. The previous paragraphs #'s 25, 26, 27, and 28 occurred prior to ARYA's first "TEC" review concerning ARYA's request for gender confirmation surgeries. The TEC, Does #1-7, has since failed to provide ARYA with any clear, definitive answer to ARYA's request for GCs or provide any change, adjustments, or advancements to ARYA's medical treatment of her Gender Dysphoria.

30. ARYA arrived at her current institution, USP Marion, on October 7th, 2021

31. After arriving at USP Marion ARYA attempted to commit suicide by hanging herself in her cell, tying a bed sheet arround her neck. Another inmate found ARYA in her cell and saved ARYA's life. See Exhibit H16

32. In ARYA's totality of being in the FBOP, ARYA has been the subject of numerous suicide risk assessments with all but one assessment being related to her "GD".

33. The TEC, in its reviews of ARYA, have been notified by multiple institutions Wardens and institution staff as to the extent of ARYA's medical issues and the extent of her Gender Dysphoria. See Exhibit. E1, E2, E6, E7, E8, E9

### Requests For Gender Confirmation Surgeries

34. The first meeting conducted by the TEC in relation to ARYA's request for GCS, (that ARYA is aware of), was conducted on March 8 2021. Three known meetings have been conducted by the TEC on April 19-2021, July 12-2021, and April 11 2022. All meetings were a result of ARYA's request for GCS and institution staff memo's documenting ARYA's history of her GD, and the consistency of her gender identity consolidation as well as her progress through her transition.
See Exhibits E1, E2, E6, E7, E8, E9

35. After TEC meetings on March 8, 2021 and April 19 2021, an initial recommendation was made by the TEC finding ARYA appropriate for transfer to a low security male facility in preparation for GCS and eventual transfer to a female facility. The TEC has provided that these transfers were part of the TEC's requirements for GCS to be provided. ARYA has consistently requested GCS before transfer to a female facility.

36. ARYA was never transferred to a low security institution due to the TEC recanting their initial recommendation. The TEC claimed the recanting was due to a detainer lodged against ARYA five years prior in 2016. The detainer is the result of an already decided case that carries a sentence that runs concurrent to ARYA's current sentence for which she is confined in the FBOP. There is no way for ARYA to resolve the detainer any further

6

than the detainers conclusion as is.

37. The TEC then recommended ARYA enroll in SOTP-R and work with her unit team to resolve her detainer before the TEC would readdress her requests for GCS. See Exhibit A26

38. ARYA of her own accord had already placed herself on the waiting list for SOTP-R in 2017 and she had previously been designated to participate in SOTP-R in March of 2020 prior to FBOP Covid Lockdown operations and prior to any TEC evaluation of her GCS requests.

39. ARYA's previous case manager at USP Tucson years before had already removed the detainer custody points from her custody point sheet.

40. The TEC met in December of 2019 and approved ARYA's lesser security transfer from a high custody USP Tucson to a Medium custody FCI Fairton. The TEC did not elect to readd ARYA's detainer points at that time.

41. ARYA was transferred from USP Tucson to FCI Fairton, NJ in January of 2020.

42. After ARYA's request for GCS and a "recommendation" she obtain another lesser security transfer pursuant to medical treatment, did the TEC declare ARYA's detainer prevented ARYA from obtaining a lesser security transfer that would have advanced her medical treatment. See Exhibits. I1, I2, I3, I4, AR 25, AR 26.

43. ARYA, after being transferred to USP Marion IL for inclusion in SOTP-R, appealed her GCS denial to Defendant Sproul. Defendant Sproul referred ARYA's request for GCS to the TEC but declined to refer ARYA's request for permanent facial hair removal stating permanent facial hair removal was "purely cosmetic".

7

44. ARYA then appealed her GCS/gender affirming procedures request to Defendant Matevousian, the North Central Regional Director to the FBOP. In ARYA's appeal and throughout ARYA's appeals she stated that denial of medical treatment has provoked more thoughts of self-castration and suicide. ARYA also reiterated that the TEC is already aware.

45. In Defendant Matevousian's response it was stated that "you have not been denied surgery or electrolysis" and "we shall defer diagnostic and treatment interventions to the Health Services at the local level. Health Services at the "local level" at multiple institutions have already concurred with Arya's appropriateness for GCS.

46. ARYA then followed up with Health Services at the local level. ARYA was instructed that Health services would continue current plan unless instructed otherwise. See Exhibit H6.

47 Per FBOP Policy Manual OPI RSD/WASB number 5200.08. the Medical Director of the FBOP (John Doe #8) is the only body who can ultimately approve GCS after a review from the institution Warden (Defendant Sproul) and the TEC (John Does #1-7)

48. In the nearly two years since the first Memo was submitted to the TEC by FCI Fairton Warden requesting GCS and procedures for ARYA, ARYA's requests for such procedures have never been definitively answered by the TEC Does #1-7, the FBOP medical director Doe #8, Defendant Connors, or Defendant Matevousian. Instead ARYA has been directed to departments whom have no authority to physically provide, grant, or deny such requests. This "merry-go-round" has been documented as leading to a decline or worsening of ARYA's Gender Dysphoria Symptoms See Exhibits H10, H12

8

49. On 16 November 2022, ARYA's final Administrative Remedy Appeal, pursuant to the PLRA, was answered by Defendant Connors. In Defendant Connors response he concurred with the previous recommendations of Defendant Matevousian and Defendant Sproul. Additionally, Defendant Connors response claimed the response was in response to ARYA's "central office appeal wherein ARYA requested transfer to a female facility. ARYA in fact did not request said transfer anywhere in ARYA's appeal.

50. ARYA asserted in her central office appeal that "she was in a male facility when she began hormone therapy to treat her Gender Dysphoria" and, she questioned why her still being in a male facility suddenly prevented any further treatment of her Gender Dysphoria. See Exhibit AR29, AR30, AR31.

51. Defendant Connors then wrote that "one factor that is considered by the TEC with regard to the process of obtaining gender-affirming surgery is that there has been significant progress toward transition as demonstrated by your medical and mental health history". Multiple Wardens, medical staff, and psychology staff have documented ARYA's significant progress. See Exhibit E1, E2, E6, E7, E8, E9

52. ARYA has been medically documented that her hormones have been at "goal" since September 2020. No change has occurred in ARYA's Hormone Therapy dosage since February 2020.

53. ARYA sent an electronic cop-out to local Health Services Administrator Ms. Harbinsons at USP Marion on 30 December 2022. Among other things, ARYA asked Health Services if they were following current central office and regional guidance for ARYA's treatment plan. Ms. Harbinsons replied on 4 January 2023 that "yes, you are correct, Health services looks to the TEC for guidance. See Exhibit H7

## COUNT I
### Deliberate Indifference to a Serious Medical Need

54. ARYA hereby restates each and every above paragraph and incorporates them by reference as though fully stated here as part of Count I of this Complaint.

55. ARYA has demonstrated, through medical and mental health history, that her GD is a serious medical issue.

56. ARYA has conveyed such issues to TEC John Does #1-7, Defendant Sproul, Defendant Matevousian, and Defendant Connors.

57. The above named defendants, despite this, have constructively denied ARYA GCS and Electrolysis, by giving ambiguous responses placing ARYA on a metaphorical "merry-go-round" directing her to other departments within the FBOP.

58. Deliberately Indifferent to ARYA's medical needs, Defendants TEC Does #1-7, Defendant Sproul, Defendant Connors, and Defendant Matevousian. in action expose ARYA to more emotional trauma and anguish. Without GCS and Electrolysis ARYA has demonstrated through her previous actions that having male genetalia, instead of her gender identified anatomy, pushes her to such a state wherein she feels the need to self-castrate herself in a surgical attempt and/or kill herself.

59. Additionally, John Doe #8 the FBOP Medical Director, TEC Does #1-7, Defendant Sproul, Connors, and Matevousian have been indifferent to ARYA's medical needs by failing to make adequate medical treatment available; Gender Confirmation Surgeries and hair electrolysis.

60. The actions and omissions of TEC Does #1-7, Defendant Sproul, Defendant Connors, Defendant Matevousian, and the FBOP Medical Director Doe #8, for failing to provide ARYA with GCS, Hair Electrolysis, and or advance

10

ARYA's medical care for her GD constitutes deliberate indifference to ARYA's serious medical need in violation of the 8th Amendment to the United States Constitution.

61. ARYA has been injured as a result of the above named Defendants actions and omissions.

62. ARYA requests the relief stated below.

## Count II
### Failure to Protect From Sexual Abuse

63. ARYA hereby restates each and every paragraph and incorporates them by reference as though fully stated here as part of Count II of this Complaint.

64. As stated above, ARYA has been subjected to repeated unwanted sexual advances as a result of being a Transgender Woman in a male prison.

65. The TEC Does #1-7, were previously made aware of the above stated issues. Multiple memos submitted by multiple institution Wardens to the TEC have clearly stated ARYA is experiencing unwanted sexual advances.

66. Despite TEC Does #1-7 knowing this information, they have failed to provide GCS as recommended by a Medical Doctor and have also failed to protect ARYA from further sexual harrassment and further unwanted sexual Advances and attention. ARYA, Institution staff have communicated her abuse to the TEC and dozens of inmates have witnessed her abuse. See Exhibits section E. Exhibit section E Staff memos, ARYA's letter to TEC, 29 letters from inmate witnesses.

67. By the TEC's omissions and knowing the risks, Does #1-7 have exposed ARYA to more unwanted sexual advances and sexual assaulted.

11

68. This blatant disregard for ARYA's safety continues to place ARYA at an advanced risk for sexual assault.

69. The actions and omissions of IEC Does #1-7, for failing to provide ARYA with recommended GCS and then moving ARYA to a gender-affirming Institution and protect ARYA from potential sexual abuse, constitutes a failure to protect ARYA in violation of the 8th Amendment of the United States Constitution.

70. As a result, ARYA has been injured by the above named Defendant's conduct.

71. ARYA requests the relief stated below.

## Count III
### Discrimination Under the Rehabilitation Act of 1973 and Equal Protection Violation

72. ARYA restates each and every paragraph above and incorporates them by reference as though fully stated here as part of Count III of this Complaint.

73. ARYA is a qualified individual with a disability for the purposes of the Rehabilitation Act. ARYA's GD substantially impacts her ability to function in her environment.

74. The Director of the FBOP Defendant Peters, discriminated against ARYA, when SHE failed, among other actions, to provide ARYA with reasonable accomodations for her disability by failing to make available and or provide GCS and Hair removal in accordance with ARYA's Gender identity.

75. The World Professional Association of Transgender Health ("WPATH) has published guidelines for incarcerated individuals since 1998.

76. In these guidelines, provides that hair removal through some means, is a suggested standard

of Care for Transgender individuals.

77. These Standards of Care have been available throughout Defendant PETERS tenure as FBOP director. Despite this, ARYA was not afforded these accommodations for her GD by Defendant PETERS.

78. The discrimination under the Rehabilitation Act of 1973 by Defendant PETERS for failing to provide accommodations for ARYA's disability is in violation of the provisions set forth under said Act and the Equal Protection Clause of the 5th Amendment to the United States Constitution.

79. As a result, ARYA was damaged by Defendant Peters Conduct.

80. ARYA requests the Relief stated below.

## Exhaustion of Administrative Remedies

81. ARYA has exhausted all administrative remedies with respect to all claims set forth in this Complaint pursuant to PLRA.

## Litigation History

82. ARYA has no outstanding civil cases in federal Court or in the State Court system, nor has ARYA had any strikes imposed upon her for civil litigation. ARYA has only one filing where ARYA sent a letter to the Court which, out of an "Abundance of Caution" was filed, but was later dismissed without prejudice with the Clerk of the Court sending ARYA instructions on how to file a civil case.

13

<u>Wherefore the Plaintiff, ARYA MILAN PERNELL, requests the following relief:</u>

A. Issue a declaratory judgement stating that:

1. The omissions of Defendants TEC Does #1-7, Defendant Sproul, Defendant Connors, Defendant Matevousian, FBOP Medical Director Doe #8 violated, and continue to violate, Plaintiff ARYA MILAN PERNELL'S rights under the 8th Amendment to The United States Constitution and constituted deliberate indifference to a serious medical need.

2. The omissions of TEC Does #1-7, for failing to move ARYA to an institution consistent with her medical needs and consistent with her safety needs constituted a failure to protect ARYA in violation of the 8th Amendment to the United States Constitution.

3. The omissions of Defendant Peters, failing to provide ARYA with a reasonable accomadation for ARYA'S Gender Dysphoria violated the Rehabilitation Act of 1973 and the Equal Protection Clause of the 5th Amendment to the United States Constitution.

B. Issue an injunction ordering Defendant Sproul, Defendant Peters, TEC Does #1-7 or their agents to:

1. Immediately arrange to have ARYA obtain Gender Confirmation Surgeries to include; Vaginoplasty, Clitoroplasty, Vulvoplasty, Labiaplasty and any other surgeries that provide ARYA with a fully sexually functional female sex anatomy. Said procedures to be conducted by a qualified medical team. "Fully functional" defined by appearance, realism, and sensation. A "Qualified Medical Team" defined by WPATH Standards of Care manual and American Medical Association Standards.

2. Provide ARYA with Pubic and Facial Electrolysis or other qualified permanent hair

removal procedures for pubic and "male" facial hair removal.

    3. Provide and arrange for ARYA's Post-operative aftercare and follow-up care related to above stated GCS procedures, as deemed necessary by a qualified medical team.

    4. Carry out without delay any preparatory treatment directed by a qualified medical provider with respect to ARYA's GD and GCS.

    5. Conduct all such Gender-Affirming Transfers. ARYA does request GCS procedures to be completed prior to movement to a female facility where post-operative care would be available, ideally, provided GCS procedures are conducted in a timely manner that expedites ARYA's removal from a sexually abusive environment, in a form or fashion that does not increase negative symptoms of her Gender Dysphoria.

    C. Award nominal Damages both jointly and severally against Defendant Connors, Matevousian, and TEC Does #1-7, in an amount to be determined at trial.

    D. Award punitive damages both jointly and severally against Defendant Connors, Matevousian, and TEC Does #1-7 in an amount to be determined at trial.

    E. Any such other relief as it appears the Plaintiff, ARYA PERNELL is entitled.

ARYA Milan Pernell does hereby state a Claim.

### Verification

I, ARYA MILAN PERNELL, the undersigned declare under penalty of perjury pursuant to 28 U.S.C 1746 declare that the contents within this Complaint are true and correct.

*Arya Milan Pernell*

On the 24 day of January 2023   Arya Milan Pernell

ARYA ˜˜˜˜˜˜˜˜˜˜˜  
USP Marion  
P.O. Box 1000  
Marion, IL 62959

## Catalog of Sections

A. Civil Complaint and requested relief.
B. Motion to appoint Counsel
  - Declaration in support of motion to appoint Counsel.
  - Motion and Affidavit to proceed without prepaying costs.
  - Motion to serve summons.
  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
AR. Exhausted Administrative Remedies.
E. Memos from Wardens and ARYA's letter to TEC submission.
F. Witness letters of unwanted sexual advances towards ARYA and letters of male inmate peers identifying ARYA as female.
G. Photographs of Plaintiff
H. ARYA's Medical/Psychology Information
I. Custody Information.

— The blacked out portion on this page was going to be a memorandum of Law, then I realized I honestly have no idea how to do one. Does the Court have any forms for a memorandum of Law and could you please send me some?

— Thankyou for your time.

Arya Pernell 17601-035
USP Marion
P.O. Box 1000
Marion, IL 62959

7021 2720 0001 8200 0259

MAIL CLEARED
US MARSHALS

Clerk of the Court
United States District Court
Southern District of Illinois
750 Missouri Avenue
East St. Louis, IL 62201

⇔17601-035⇔
Us Court Melvinprice Fed
Rm. 104
750 Missouri AVE
E Saint Louis, IL 62201
United States



RECEIVED

FEB 06 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE