IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARYA MILAN PERNELL, *also known as Aaron Pernell,* #17601-035,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JOHN DOES #1-7, *Members of the Transgender Executive Council,* <br>DAN SPROUL,<br>COLETTE PETERS,<br>IAN CONNORS,<br>ANDRE MATEVOUSIAN, and<br>JOHN DOE #8, *Medical Director,*<br><br>　　　　　Defendants. | Case No. 23-cv-00374-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

　　Plaintiff Arya Milan Pernell is an inmate in the custody of the Federal Bureau of Prisons and currently incarcerated at United States Penitentiary in Marion, Illinois ("USP Marion"). Plaintiff filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and the Rehabilitation Act, 29 U.S.C. §§ 794–94e, alleging inadequate medical care at the United States Penitentiary in Marion, Illinois ("USP Marion"). Plaintiff seeks declaratory, injunctive, and monetary relief. This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen and dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

　　Plaintiff states that she entered the custody of the Federal Bureau of Prisons ("BOP") in

2016. (Doc. 1, p. 3). That same year, she began identifying as a transgender woman and informed BOP staff. On September 1, 2016, a psychologist diagnosed Plaintiff "as being a male to female transgender." In April 2019, Plaintiff was diagnosed with gender dysphoria. (*Id.*). Plaintiff began receiving hormone therapy in August 2019. (Doc. 1, p. 4). Plaintiff states that she lives as a female as much as permitted while in custody. She wears makeup and female undergarments and has developed secondary female sex characteristics. (*Id.*).

Because of her appearance, Plaintiff asserts that she has been subjected to unwanted sexual advances and attention from other inmates. (Doc. 1, p. 4). Prior to her transfer to USP Marion, Plaintiff was housed at Federal Correctional Institution Fairton in New Jersey ("Fairton"). At Fairton, Plaintiff was the victim of three separate "Prison Rape Elimination Act incidents." Plaintiff and staff at Fairton communicated to the BOP Transgender Executive Council that Plaintiff was receiving unwanted sexual advances. (*Id.*). Also, while at Fairton, Plaintiff notified health services that she could no longer live with male genitalia and inquired about "voluntary castration." (*Id.* at p. 5). She communicated to medical personnel that she either had to kill herself or attempt self-surgery. In July 2020, Plaintiff attempted to castrate herself and was hospitalized. Plaintiff was evaluated at the hospital by Dr. Ghobrial-Sedky. Dr. Ghobrial-Sedky recommended that Plaintiff "first and foremost needs assistance with resources and a plan for gender reassignment surgery." (*Id.*).

Plaintiff has met three times with the Transgender Executive Council – April 19, 2021, July 12, 2021, and April 11, 2022. (Doc. 1, p. 6). The meetings were scheduled in response to Plaintiff requesting gender confirmation surgery and memos written by staff. Following the first two meetings, a recommendation was made that Plaintiff was an appropriate candidate for transfer to a low security male facility in preparation for gender confirmation surgery and eventual transfer to a female facility, after the surgery was performed. The Transgender Executive Council later

withdrew the recommendation due to a detainer lodge against Plaintiff in 2016. (*Id.*). The Transgender Executive Council then recommended for Plaintiff to participate in the sex offender treatment program and work with her team to resolve the detainer before the Council would address her requests for gender confirmation surgery. (*Id.*).

Plaintiff asserts that prior to the evaluation by the Transgender Executive Council, she had already placed herself on the waiting list to participate in the sex offender treatment program in 2017 and was scheduled to participate in 2020. (Doc. 1, p. 7). Her ability to participate was delayed due to COVID lockdowns. As to the detainer, she states:

> The detainer is the result of an already decided case that carries a sentence that runs concurrent to [her] current sentence for which she is confined in the FBOP. There is no way for [her] to resolve the detainer any further than the detainers conclusion as is.

(*Id.* at p. 6-7). Plaintiff further argues that her case manager had removed "the detainer custody points from her custody point sheet," and she had been transferred from a high security facility in Tucson, Arizona to a medium security facility in Fairton, New Jersey. Plaintiff claims that the Transgender Executive Council did not read her detainer points at the time of her review. (*Id.* at p. 7).

Plaintiff was transferred to USP Marion on October 7, 2021, so that she could participate in the sex offender treatment program. (Doc. 1, p. 5; Doc. 1-6, 23). After arriving and experiencing hopelessness "about her journey toward confirmation surgery," Plaintiff attempted to commit suicide by hanging herself using a bed sheet. (Doc. 1, p. 5; Doc. 1-1, p. 7). Plaintiff states that she regularly has been subjected to suicide risk assessments due to her gender dysphoria.

After her transfer to USP Marion, Plaintiff appealed the denial of gender confirmation surgery to Warden Sproul. (Doc. 1, p. 7). Sproul referred the request for surgery to the Transgender Executive Council but did not refer Plaintiff's request for permanent facial hair removal. Sproul

recorded that the hair removal procedure was "purely cosmetic." (*Id.*).

Plaintiff then appealed her request for gender affirming procedures to North Central Regional Director Matevousian. (Doc. 1, p. 8). Matevousian responded to the appeal stating that Plaintiff had not been denied surgery or electrolysis. He wrote, "we shall defer diagnostic and treatment interventions to the health services at the local level." (*Id.*). Plaintiff then followed up with local health services. Health services informed Plaintiff that health services "would continue current plan unless instructed otherwise." (*Id.*).

On November 16, 2022, Plaintiff's final administrative appeal was answered by Ian Conners. (Doc. 1, p. 9). Conners concurred with the previous recommendations of Matevousian and Sproul. Conners wrote, "one factor that is considered by the TEC with regard to the process of obtaining gender-affirming surgery is that there has been significant progress toward transition as demonstrated by your medical and mental health history." Plaintiff states that her medical record demonstrates significant progress. (*Id.*).

Plaintiff asserts that it has been two years since the first memo was submitted to the Transgender Executive Council by the warden at Fairton requesting gender confirmation surgery and other procedures, and her requests have never been definitively answered by the Council. (Doc. 1, p. 5, 8). Additionally, she has not been provided any change, adjustment, or advancement in her medical treatment for her gender dysphoria. Instead, she has been directed to other departments that do not have the authority to provide, grant, or deny her requests. (*Id.* at p. 8).

### DISCUSSION

Based on the allegations in the Complaint and Plaintiff's description of her claims, the Court designates the following counts in this pro se action:

> **Count 1:** Eighth Amendment claim against Members of the Transgender Executive Counsel, Sproul, Connors, Matevousian, and John Doe #8 for deliberate indifference to Plaintiff's serious medical needs.

|  |  |
|---|---|
| **Count 2:** | Eighth Amendment claim against Members of the Transgender Executive Counsel for failing to protect Plaintiff from sexual abuse and harassment. |
| **Count 3:** | Equal protection claim against Peters for failure to accommodate Plaintiff's disability. |
| **Count 4:** | Rehabilitation Act claim against Peters for failure to accommodate Plaintiff's disability. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequate pled under the *Twombly* pleading standard.[1]

## *Bivens* Claims

There is no Congressional authority to award damages to "plaintiffs whose constitutional rights [have been] violated by agents of the Federal Government." *Ziglar v. Abbasi,* 582 U.S. 120 (2017). In *Bivens*, however, the Supreme Court recognized an implied action for damages to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* Since this decision, the Supreme Court has recognized only two other instances in which an implied damages remedy under *Bivens* is available for a constitutional deprivation – a Fifth Amendment sex discrimination claim and an Eighth Amendment claim for denial of medical care for a serious medical condition. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green,* 446 U.S. 14 (1980). Recent cases have declined to extend a *Bivens* remedy to any other contexts and stated that further expansion of *Bivens* is a "disfavored judicial activity." *Ziglar,* 582 U.S. at 135 (declining to extend *Bivens* to Fifth Amendment due process/conditions of confinement/abuse and equal protection claims and to Fourth/Fifth Amendment strip search claims); *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (no *Bivens* remedy for First Amendment retaliation claim or Fourth Amendment excessive force claim).

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

When presented with a proposed *Bivens* claim, a district court must undertake a two-step inquiry. *See Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). First, a court asks whether the case presents a new *Bivens* context, *i.e.*, whether it is meaningfully different from the three cases in which the Supreme Court previously implied a damages action. *Ziglar*, 582 U.S. at 138-140. Second, if a claim arises in a new context, the court must consider whether any "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id.* If even one reason gives the court pause before extending *Bivens* into a new context, the court cannot recognize a *Bivens* remedy.

**Count 1**

Plaintiff asserts that her gender dysphoria is a serious medical need and that Members of the Transgender Executive Council, Sproul, Matevousian, Conners, and John Doe #8, the BOP medical director, acted with deliberate indifference by failing to provide adequate treatment, specifically, gender confirmation surgery and hair electrolysis. (Doc. 1, p. 8, 10). Without proper treatment, Plaintiff experiences extreme emotional distress and engages in self-harm.

At this stage, Plaintiff has sufficiently stated an Eighth Amendment claim against the Members of the Transgender Executive Counsel, Sproul, Matevousian, Conners, and the BOP medical director for failing to take action to secure her medical care. *See Perez v. Fenoglio,* 792 F. 3d 777 (7th Cir. 2015) ("Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers blatantly inappropriate medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering."). *See also Mitchell v. Kallas,* 895 F. 3d 492, 499 (7th Cir. 2018) (in discussing qualified immunity, the Seventh Circuit held that "[p]rison officials have been on notice for years that leaving serious medical conditions, including gender dysphoria, untreated can amount to unconstitutional

deliberate indifference"). Further, this claim does not appear to differ in a meaningful way from the Eighth Amendment claims in *Carlson*. Accordingly, Plaintiff may proceed on Count 1 under *Bivens* against Defendants in their individual capacities for monetary relief.

To the extent Plaintiff is seeking to sue Defendants in their official capacities under *Bivens,* such claims are dismissed. Claims under *Bivens* are brought against officials in their individual capacities for money damages. *Bunn v. Conley,* 309 F.3d 1002, 1009 (7th Cir. 2002); *Yeadon v. Lappin,* 423 F. App'x 627, 629 (7th Cir. 2011).

**Count 2**

Plaintiff's claim that the Members of the Transgender Executive Committee, failed to protect her from sexual harassment, assault, and unwanted advances by not approving Plaintiff for gender confirmation surgery followed by a transfer to a female institution. (Doc. 1, p. 11-12). The Court finds that this claim involves a new *Bivens* context and Congress is better suited than the Judiciary to construct a damages remedy, and therefore, Count 2 will be dismissed.

Plaintiff's allegations that the Members of the Transgender Executive Counsel are disregarding her safety are not similar to any of the three cases previously decided by the Supreme Court. *See Ajaj v. Fozzard,* No. 14-cv-01245-JPG, 2023 WL 2989654 (S.D. Ill. Apr. 18, 2023) (declining to extend *Bivens* to an excessive force claim brought under the Eighth Amendment). *See also Chambers v. C Herrera,* 78 F. 4th 110, 1105-06 (9th Cir. 2023) ("No case has extended *Bivens* to claims that BOP employees violated the Eighth Amendment by failing to protect an inmate from other staff members. *Carlson* also concerned specific actions taken against an individual inmate, whereas [Plaintiff's] failure to protect claim would impose *Bivens* liability for inaction."); *Looper v. Jones,* No. 22-40579, 2023 WL 5184910, at *2 (5th Cir. Sept. 8, 2023) (failure to protect an inmate from a lethal attack by a cellmate did not state claim under *Bivens*). Furthermore, a special factor exists counseling against the expansion of *Bivens*. Plaintiff, as a

federal inmate, has an avenue of relief through the Bureau of Prison's Administrative Remedy Program. *See* 28 C.F.R. §542.10 *et seq.* Through this alternative remedial structure, Plaintiff could seek "formal review an issue relating to any aspect of [her]…own confinement," including abusive treatment by staff. 28 C.F.R. §542.10(a). The Supreme Court has directed that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert,* 142 S. Ct. at 1804 (internal citations and quotations omitted). Whether or not the Administrative Remedies Program actually provided Plaintiff with the relief she is seeking is irrelevant to the Court's analysis, as "the question of whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id.* at 1807. Accordingly, the Court finds that the Administrative Remedy Program forecloses a *Bivens* claim for the allegations in Count 2, and Plaintiff's Eighth Amendment claim for failure to protect is dismissed with prejudice.

**Count 3**

Plaintiff alleges that BOP Director Peters violated the equal protection clause by not accommodating her by providing gender confirmation surgery and hair removal procedures. (Doc. 1, p. 12-13).

Plaintiff has not stated a claim for a violation of the equal protection clause under the Fifth Amendment against Peters. "The Equal Protection Clause…prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse, Wis.*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff's allegation that she was "not provided accommodations for her disability" is not sufficient. It is not clear if Plaintiff is stating that because she has an illness she is the member of a protected class or more specifically, because

she is transgender, and she does not plead facts showing that she was singled out by Peters for disparate treatment because of her membership of a protected class. Nor does Plaintiff plead a class-of-one claim. The Complaint does not contain any allegations from which the Court can plausible infer she has been intentionally treated differently from other persons similarly situated. *See Forgue v. City of Chi.*, 873 F.3d 962, 968 (7th Cir. 2017). Count 3 is dismissed without prejudice.

### Count 4

The Rehabilitation Act ("RA") provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794.

At this point, Plaintiff has sufficiently stated a claim under the RA, and Count 4 will proceed against Collette Peters, the BOP director, in her official capacity only. *See Iglesias v. True,* 403 F. Supp. 3d 680, 687 (S.D. Ill. July 25, 2019) (allowing an RA claim for failing to accommodate the plaintiff's gender dysphoria to proceed past 1915A review). Count 4 is dismissed against Peters in her individual capacity.

### CLAIM FOR INJUNCTIVE RELIEF

As discussed in Count 1, Plaintiff cannot pursue a *Bivens* claim for injunctive relief. Plaintiff, however, can obtain injunctive relief under the RA and generally speaking, against a high-ranking official named in his or her official capacity. *See King v. Hill,* 2022 WL 3348789, at *5 (S.D. Ill. Aug. 12, 2022) ("Under the Court's general equitable powers, a plaintiff can also bring a claim for injunctive relief against a federal official in his or her official capacity, if that officer is responsible for implementing the injunctive relief sought." (citations omitted)). *See also*

*Pinson v. Othon,* No. CV- 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) ("a prisoner may bring an on-*Bivens* action for injunctive relief to stop Eighth Amendment violation based on conditions of confinement").

Plaintiff has named all defendants in their official capacities and requests various forms of injunctive relief, but she does not associate the requests for injunctive relief with any particular claim. While not clearly pled, the Court will allow Plaintiff to proceed on her request for injunctive relief under the RA and in connection with her surviving Eighth Amendment claim, as specified in Count 1. BOP Director Peters is already a defendant in her official capacity under Plaintiff's RA claim and shall also remain a defendant in her official capacity for the purposes of implementing any injunctive relief that may be awarded regarding Plaintiff's Eighth Amendment claim.

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Plaintiff will be allowed to proceed with Count 1 against the unknown Members of the Transgender Executive Committee (John Does #1-7) and John Doe #8, the medical director of BOP. However, these parties must be identified with particularity before service of the complaint can be made on them. The Plaintiff shall have the opportunity to engage in limited discover in order to ascertain the identity of those defendants. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Director Collette Peters shall be responsible for responding to discovery aimed at identifying the unknown defendants. Once their names are discovered, Plaintiff must file a motion to substitute each newly-identified defendant in place of the generic designations in the caption and Complaint.

### REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF

In Plaintiff's requests for relief section of the Complaint, she asks that Defendants, "[i]mmediately arrange to have [her] obtain gender confirmation surgeries." (Doc. 1, p. 14).

Plaintiff did not file a separate motion in support of the request, nor did she set forth the reasons she is entitled to this relief under Federal Rules of Civil Procedure 65(a). Thus, to the extent Plaintiff is seeking a preliminary injunction, the request is **DENIED without prejudice.**

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel to represent her in this matter. (Doc. 4, 8).[2] Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two-part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Although Plaintiff has demonstrated reasonable efforts to locate counsel on her own without success, the Court is not persuaded that she requires court-recruited counsel to assist her at this time. Plaintiff states that she has not legal training or knowledge of the law. She is relying on the assistance of another inmate to help prepare documents and review the case. Plaintiff is also concerned with conducting merits discovery and trying the case before a jury. These obstacles are not unique to Plaintiff as a pro se litigant and do not warrant counsel at this early stage. Plaintiff's Complaint has survived preliminary review, and with help from others, she has demonstrated an ability to construct coherent sentences and relay information to the Court. Plaintiff even cites to case law in support of her arguments. Once discovery on the merits commences, if Plaintiff continues to have difficulties, she may refile her motion. Accordingly, the motion for recruitment of counsel is **DENIED.** (Doc. 4).

---

[2] The motion to amend the motion for recruitment of counsel (Doc. 8) is **GRANTED.**

**MOTION FOR SERVICE OF PROCESS**

Because Plaintiff has been granted leave to proceed *in forma pauperis* (Doc. 7), the Court is obligated to arrange service on her behalf. The Motion for Service of Process at Government Expense (Doc. 3) is therefore **DENIED as moot.**

**DISPOSITION**

Pursuant to Section 1915A, the Complaint survives preliminary review. **COUNT 1** will proceed against the Members of the Transgender Executive Council, Sproul, Connors, Matevousian, and John Doe #8. **COUNT 4** will proceed against Peters. **COUNT 2** is **DISMISSED with prejudice** and **COUNT 3** is **DISMISSED without prejudice**. Plaintiff may proceed with her requests for injunctive relief under her RA claim and Eighth Amendment claim, as articulated in Count 1.

The Clerk **SHALL** enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court is further **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants Sproul, Peters, Connors, Matevousian, and the Members of the Transgender Executive Committee and John Doe #8 (once identified); the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve Defendants pursuant to Federal Rule of Civil Procedure 4(e). All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General

of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that if judgment is rendered against her and the judgment includes the payment of costs under 28 U.S.C. § 1915, she will be required to pay the full amount of the costs, even though her application to proceed without payment of fees was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 28, 2023**

                                                    *s/Stephen P. McGlynn*
                                                    **STEPHEN P. MCGLYNN**
                                                    **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.