IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ARYA MILAN PERNELL,** *also known as Aaron Pernell,* | |
| **Plaintiff,** | Case No. 23-cv-00374-SPM |
| v. | |
| **DAN SPROUL,** *et al.*, | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on Plaintiff's Motion for Clarification and two Motions for Leave to File an Amended Complaint. (Doc. 69, 70, 73). The Court will also address Plaintiff's Motion to Appoint Counsel and motions pertaining to her request for mediation and status of this case. (Doc. 68, 71, 74, 78, 79).

**I. Motion for Clarification and First Motion for Leave to File an Amended Complaint (69, 70)**

Plaintiff has filed a motion seeking clarification on the Court's order granting her additional time to produce initial disclosures and identify the John Doe Defendants. (*See* Doc. 64). She asks whether the Court' order also extended the deadline to amend the complaint. Plaintiff expressions confusion regarding how she will be able to substitute the John Does if the deadline to amend was not extended. Plaintiff states that she has filed a motion for leave to amend but does not have a proposed amended complaint that includes names of the John Doe Defendants at the time of filing on August 26, 2024.

Plaintiff's motion for clarification is **GRANTED.** In her original motion seeking an extension of time, Plaintiff expressed difficulty "providing Defendants with information." (*See*

Doc. 61). The Court construed the motion as requesting additional time to produce initial disclosures and information pertaining to the John Does. Plaintiff did not ask for an extension of the deadline to amend the Complaint. As stated in the Scheduling and Discovery Order, once Plaintiff has identified the John Does, she is to file a motion to substitute, an amended complaint is not necessary. (Doc. 56, p. 3). The Court will construe the first Motion for Leave to File Amended Complaint filed on August 26, 2024, however, as a motion for extension of time. The motion is **GRANTED,** and the second Motion for Leave to File an Amended Complaint filed on September 18, 2024 (Doc. 73), is **DEEMED** timely filed.

II.     Second Motion for Leave to File an Amended Complaint (Doc. 73)

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading and that leave to amend should be freely given "when justice so requires." The Seventh Circuit maintains a liberal attitude toward the amendment of pleadings "so that cases may be decided on the merits and not on the basis of technicalities." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). The Circuit recognizes that "the complaint merely serves to put the defendant on notice and is to be freely amended or constructively amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant." *Toth v. USX Corp.*, 883 F.2d 1297, 1298 (7th Cir. 1989); *see also Winger v. Winger*, 82 F.3d 140, 144 (7th Cir. 1996). Plaintiff's motion is timely filed, and Defendants do not oppose the motion. Thus, the Court **GRANTS** the Motion for Leave to File an Amended Complaint. (Doc. 73). The Clerk will be directed to file the proposed amended complaint as the First Amended Complaint with the attached exhibits. (Doc. 73-1, 73-2, 73-3, 73-4, 73-5).

III.     Section 1915A Merit Review of the First Amended Complaint

The First Amended Complaint is subject to review under 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim

upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

    a. **Alleged Facts in the First Amended Complaint**

In the First Amended Complaint, Plaintiff alleges the following: Plaintiff entered the custody of the Federal Bureau of Prisons ("BOP") in 2016 and identified herself as a transgender female within the first 365 days of her incarceration. (Doc. 73-1, p. 5). On September 1, 2016, it was recorded in her medical file that she is transgender. In April 2019, Plaintiff was diagnosed with gender dysphoria. Plaintiff began receiving hormone therapy in August 2019. Plaintiff states that she lives as a female as much as possible and is recognized by staff and other inmates as female. (*Id.* at p. 5-6). Due to the hormone therapy, she has developed secondary female sex characteristics. (*Id.* at p. 6). In September 2020, she alleges that she reached "hormone 'goal' level according to staff." (*Id.*).

Plaintiff claims that she has repeatedly requested gender confirmation surgery, which has not been approved, and she has not been receiving adequate medical care for her gender dysphoria. In July 2020, after sending an email to staff notifying them that she could no longer live with male genitalia, Plaintiff attempted self-castration and was hospitalized. Plaintiff was evaluated at the hospital by Dr. Ghobrial-Sedky. Dr. Ghobrial-Sedky recommended that Plaintiff "first and foremost needs assistance with resources and a plan for gender reassignment surgery." (*Id.*).

Following Plaintiff's attempt to self-harm, her request for gender confirmation surgery was reviewed by the Transgender Executive Counsel ("TEC") on March 8, April 19, and July 12, 2021. (Doc. 73-1, p. 7). Following the March 8 and April 19 meetings, the TEC made an initial recommendation to transfer Plaintiff to a low security male facility in preparation for gender

confirmation surgery and eventual transfer to a female facility. (*Id.* at p. 8). This determination, however, was revoked, and Plaintiff was never transferred to a low security institution due to a "detainer lodged against [Plaintiff] five years prior in 2016." The TEC claimed that Plaintiff's detainer classification prevented her from obtaining a lesser security transfer. Plaintiff states that the detainer will not be resolved during her period of incarceration because it runs concurrent with her sentence and alleges that the detainer points have been miscalculated. (*Id.*).

The TEC then made a subsequent recommendation to have Plaintiff enroll in the Residential Sex Offender Treatment Program ("SOTP-R"). (Doc. 73-1, p. 9). Once Plaintiff "worked with her unit team to resolve her detainer," the TEC would then readdress her request for gender confirmation surgery. (*Id.*). Based on the TEC recommendation, Plaintiff was transferred to United States Penitentiary in Marion, Illinois ("USP Marion") on October 7, 2021, and placed in SOTP-R. (*Id.* at p. 7). After arriving at USP Marion, Plaintiff attempted to hang herself in her cell. (*Id.*). Plaintiff also appealed the denial of gender confirmation surgery and permanent facial hair removal procedure to Warden Dan Sproul. (*Id.* at p. 9). Sproul referred Plaintiff's request for gender confirmation surgery to the TEC but declined to refer the request for permanent facial hair removal procedure because the procedure was "purely cosmetic." (*Id.* at p. 10).

Plaintiff then appealed her request for gender confirming surgery and procedures to Andre Matevousian, the BOP North Central Regional Director. (Doc. 73-1, p. 10). In all her requests and appeals, Plaintiff would state that denial of medical treatment was causing her to have thoughts of self-castration and suicide. In response to her appeal, Matevousian stated:

> You have not been denied surgery or electrolysis and we shall defer diagnosis and treatment interventions to the health services at the local level. Health services at the local level at multiple institutions have already concurred with [Plaintiff's] appropriateness for GCS.

(*Id.*). Plaintiff followed-up with local health services and was informed that the current course of

treatment would continue, unless instructed otherwise.

Plaintiff appealed the decisions of Sproul and Matevousian. (Doc. 73-1, p. 11). In response to the appeal, Administrator Connors concurred with the previous recommendations of Matevousian and Sproul. Connors wrongly stated that Plaintiff was requesting transfer to a female facility. (*Id.*). Plaintiff states the that BOP Medical Director, Dr. Elizabeth Stahl, is the only person who can ultimately approve gender confirmation surgery, after the request has been reviewed by the warden and the TEC. (*Id.*).

The TEC continued to conduct meetings regarding Plaintiff's gender confirmation surgery request on January 10, April 11, and November 14, 2022. (Doc. 73-1, p. 7-8). Meetings were also held in 2023 and 2024. (*Id.* at p. 8). In 2024, Plaintiff completed SOTP-R, as recommended by the TEC. (*Id.* at p. 7, 9). Plaintiff was then transferred to Federal Correctional Institution in Marianna, Florida ("FCI-Marianna") in the summer of 2024. (*Id.* at p. 9). She asserts that she has still "not received any change, advancement, plan, or procedure to [her] recommended needs for [gender confirmation surgery]." (*Id.*). Plaintiff has requested to videoconference with the TEC, but her requests have been denied. (*Id.* at p. 8). She has never been allowed to be present for any of the TEC evaluations of her case, and she has never met with a member of the TEC. (*Id.*).

Plaintiff alleges that it is has been four years since the first request for gender confirmation surgery and procedures was sent by the warden at the Federal Correctional Institute at Fairton, New Jersey, and her request has never been definitively answered by the TEC Defendants,[1] Medical Director Dr. Stahl, Administrator Connors, or BOP Regional Director Matevousian. (Doc. 73-1, p. 10). She claims that the denial and delay of needed medical care has been a "metaphorical

---

[1] Plaintiff lists the following Defendants as members of TEC and/or otherwise involved in denying her constitutionally adequate care: Brandi Reynolds, Donald Lewis, Jeffrey Burkett, Linda Geter, Shannon Robbins, Alix McLearen, Chris Bina, Jared Rardin, Todd Chapman, Ken Woods, Kenneth Hyle, Kerri Pistro, John O'Brien, Corrine Nastro, Medical Director Dr. Elizabeth Stahl, BOP Director Colette Peters, Andre Matevousian, Ian Conners, and Dan Sproul. (Doc. 73-1, p. 6, 8).

merry-go-round'" in which she keeps being referred to different departments. (*Id.* at p. 12).

### b. Preliminary Dismissals

The Court dismisses all claims against John Does #1-7. Plaintiff was originally allowed to proceed against unknown members of the TEC named in the original Complaint and discovery has been conducted aimed at identifying these individuals. Plaintiff has now named fifteen members of the TEC in the First Amended Complaint but states that there still may be an indefinite number of unknown individuals on the TEC who continue to be involved in the ongoing denial of medical care. (Doc. 73-1, p. 5). This is not sufficient to state a claim.

While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of medical providers violated her constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Plaintiff must make plausible allegations against individuals. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). When a plaintiff does nothing but state that an indefinite number of TEC members harmed her without providing more, all she has done is establish that there is a "sheer possibility" that someone in that group harmed her. That is, Plaintiff may not know the name of individual defendants, but she must describe the "who, what, why, where, and how" that form the basis of the claim against that person. To allow otherwise would be effectively allowing Plaintiff to amend her complaint further at will without review of this Court, a result contrary to both the local rules and Section 1915A. Because the First Amended Complaint neither describes the unknown

defendants nor their conduct, Plaintiff could ascribe any conduct she chooses to any number of people that occurred at any time during the relevant time period. For these reasons, John Does #1-7 are dismissed without prejudice.

### c. Discussion

Based on the allegations in the First Amended Complaint and Plaintiff's description of her claims, the Court *redesignates* the following counts in this pro se action:

**Count 1:** Eighth Amendment claim against Sproul, Peters, Connors, Matevousian, Stahl, Reynolds, Burkett, Lewis, Geter, Robbins, McLearen, Bina, Rardin, Chapman, Woods, Hyle, Pistro, O'Brien, and Nastro for deliberate indifference to Plaintiff's serious medical needs.

**Count 2:** Rehabilitation Act claim against Peters for failure to accommodate Plaintiff's disability.

Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequate pled under the *Twombly* pleading standard.[2]

For the reasons stated in the previous Merit Review Order, Count 1 will proceed against Defendants Sproul, Peters, Connors, Matevousian, Stahl, Reynolds, Burkett, Lewis, Geter, Robbins, McLearen, Bina, Rardin, Chapman, Woods, Hyle, Pistro, O'Brien, and Nastro under *Bivens* in their individual capacities only and is dismissed against Defendants to the extent Plaintiff is suing them in their official capacities. (*See* Doc. 19, p. 5-7). Count 2 (previously Count 4) also survives preliminary review against Peters in her official capacity only for the reasons stated in the previous Merit Review Order. (*Id.* at p. 9). Count 2 is dismissed against Peters in her individual capacity.

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

    **d. Request for Injunctive Relief**

Plaintiff cannot pursue a *Bivens* claim for injunctive relief. Plaintiff, however, can obtain injunctive relief under the RA and generally speaking, against a high-ranking official named in his or her official capacity. *See King v. Hill,* 2022 WL 3348789, at *5 (S.D. Ill. Aug. 12, 2022) ("Under the Court's general equitable powers, a plaintiff can also bring a claim for injunctive relief against a federal official in his or her official capacity, if that officer is responsible for implementing the injunctive relief sought." (citations omitted)). *See also Gooch v. Young,* No. 19-cv-00607-JPH-MJD, 2023 WL 8019463, at *3 (S.D. Ind. Nov. 17, 2023) ("The federal courts may grant injunctive relief against federal officials who are violating federal law." (citing *Armstrong v. Exceptional Child Ctr.,* 575 U.S. 320, 326-27 (2015))); *Pinson v. Othon,* No. CV- 20-00169-TUC-RM, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) ("a prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violation based on conditions of confinement").

The Court will therefore allow Plaintiff to proceed on her request for injunctive relief under the RA and in connection with her surviving Eighth Amendment claim, as specified in Count 1. BOP Director Peters is already a defendant in her official capacity under Plaintiff's RA claim and shall also remain a defendant in her official capacity for the purposes of implementing any injunctive relief that may be awarded regarding Plaintiff's Eighth Amendment claim. To the extent Plaintiff is suing the other Defendants in their official capacities, such claims are dismissed.

**IV.   Motion for Appointment of Counsel (Doc. 68)**

Plaintiff has filed a third motion asking the Court to recruit counsel to assist her in this case. She states that she seeks counsel due to the severe disparity between her ability to litigate this case and the Defendants' clear advantage and support. She states that she is unable to keep up with the demands of the scheduling order due to delay in the mail.

The Court still finds that Plaintiff is capable of litigating this case herself without the

assistance of Court recruited counsel. Despite her lack of legal knowledge, she has filed two successful complaints and is a zealous advocate for herself, often seeking clarification, status of her case, and additional time as needed. Her filings show that she can clearly read, write, and communicate to the Court. Plaintiff has also stated that she receives assistance from other inmates. Accordingly, the Court finds that Plaintiff has the ability to proceed pro se at this time, and her motion for the recruitment of counsel is **DENIED**. (Doc. 68).

    **V.**      **Motions Concerning Mediation (Doc. 71 and 78)**

Plaintiff has filed a second motion seeking mediation. (Doc. 71). On July 31, 2024, the Court denied Plaintiff's first motion for mediation. Plaintiff was instructed to communicate with Defense Counsel directly and send a settlement demand letter. (Doc. 64). Once Plaintiff had conferred with Defense Counsel, then the Court would consider scheduling a settlement conference. (*Id.*).

Defendants respond to the motion arguing that the motion should be denied. Not only has Plaintiff has not send Defense Counsel a demand, but she has not performed all the steps needed for surgery and so the motion is premature. (Do. 72).

Plaintiff then filed a motion for clarification. (Doc. 78). She argues that she followed the Court's instructions by including her request for relief in her initial disclosures – surgery and damages in the "fullest-amount." She states that she is not sure "what the fullest amount allowed by law is," and seeks clarification on what to include in the settlement demand letter.

The Motion for Clarification is **GRANTED** and the Motion for Mediation is **DENIED.** (Doc. 71, 78). In sending a settlement demand letter, Plaintiff must include the specific dollar amount she is willing to accept in exchange for settling this case. The Court cannot advise Plaintiff on what this number should be. The settlement demand sent to Defendants is confidential and should not be filed on the record. In the early stages of litigation, the Court will not refer a case to

a settlement conference unless both sides agree that a conference would be beneficial. Because Defendants have expressed that they believe a settlement conference would not be fruitful, the motion is premature and is denied.

### VI.   Motions for Status (Doc. 74, 79)

The Motions for Status are **GRANTED** in light of this Order. The Clerk of Court is **DIRECTED** to send Plaintiff a copy of the docket sheet. The Motion to Compel (Doc. 75) remains pending.

### VII.   Notice (Doc. 76)

Document 76 titled "Notice to Lead Attorney Concerning Doc. #56 Scheduling Order" appears to be Plaintiff's initial disclosures and information pertaining to the John Does. Plaintiff was instructed that these documents were to be produced directly to Defense Counsel and not filed with the Court. (*See* Doc. 56). Accordingly, Document 76 is **STRICKEN.**

### DISPOSITION

For the reasons stated above, the Motion for Clarification is **GRANTED.** (Doc. 69). The Court construes the first Motion for Leave to File an Amended Complaint as a motion for extension of time, and the Motion is **GRANTED.** (Doc. 70). The second Motion for Leave to File an Amended Complaint is deemed timely filed and is **GRANTED.** (Doc. 73). The Clerk of Court is **DIRECTED** to file the proposed amended complaint at Document 73-1 and the attached exhibits on the docket as the First Amended Complaint. (Doc. 73-1, 73-2, 73-3, 73-4, 73-5).

Pursuant to Section 1915A, the First Amended Complaint survives preliminary review. **COUNT 1** will proceed against Defendants Matevousian, Peters, Sproul, Connors, Stahl, Reynolds, Burkett, Lewis, Geter, Robbins, McLearen, Bina, Rardin, Chapman, Woods, Hyle, Pistro, O'Brien, and Nastro in their individual capacities only. **COUNT 2** will proceed against Defendant Peters in her official capacity only. Plaintiff is proceeding on a claim for **injunctive**

**relief** against Defendant Peters in her official capacity. All official capacity claims against the other Defendants are dismissed without prejudice. All claims against John Does #1-7 are dismissed without prejudice and the Clerk of Court is **DIRECTED** to terminate them as defendants.

The Clerk of Court is further **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants Stahl, Reynolds, Burkett, Lewis, Geter, Robins, McLearen, Bina, Rardin, Chapman, Woods, Hyle, Pistro, O'Brien, and Nastro; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve Defendants Stahl, Reynolds, Burkett, Lewis, Geter, Robins, McLearen, Bina, Rardin, Chapman, Woods, Hyle, Pistro, O'Brien, and Nastro pursuant to Federal Rule of Civil Procedure 4(e). All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the First Amended Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the First Amended Complaint, and this Memorandum and Order.

All Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

The Motion for Appointment of Counsel and the Motion for Mediation are **DENIED**. (Doc. 68, 71). The Motion for Clarification and the Motions for Status are **GRANTED.** (Doc. 78, 74, 79). The Clerk of Court is **DIRECTED** to send Plaintiff a copy of the docket sheet.

Plaintiff is further **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   October 22, 2024**

                                            *s/Stephen P. McGlynn*
                                            **STEPHEN P. MCGLYNN**
                                            **United States District Judge**