Arya Milan Pernell
Federal Correctional Institution
P.O. Box 7007
Marianna, FL 32446
Plaintiff, Pro Se

United States District Court
Southern District of Illinois

Arya Milan Pernell
   Plaintiff
    V.
Andre Matevousian, Colette Peters, Dan Sproul, Ian Connors, Dr. Elizabeth Stahl, Brandi Reynolds, Jeffrey Burkett, Donald Lewis, Linda Geter, Shannon Robbins, Alix Mclearen, Chris Bina, Jared Rardin, Todd Chapman, Ken Woods, Kenneth Hyle, Kerri Pistro, John O'Brien, Corrine Nastro, Transgender Executive Council, John Does #1-7 (any unknown member of "TEC")

Case No. 23-CV-00374-SPM
Civil Rights Complaint Pursuant to Bivens V. Six Unknown Named agents of the Federal Bureau of Narcotics 403 U.S. 388 1971 And 28 U.S.C 1331
Rehabilitation Act of 1973

Bench Trial Requested

## Introduction

This is a Civil Action filed by Arya Milan Pernell, a federal prisoner in the care and custody of the Federal Bureau of Prisons (FBOP) for damages, declaratory, and injunctive relief. This Complaint alleges the ongoing denial of medical care, deliberate indifference to a serious medical need in violation of the 8th Amendment of the United States Constitution, and failure to Accomodating a serious disability under the Rehabilitation Act of 1973.

## Jurisdiction and Venue

(1). This Court has subject matter jurisdiction pursuant to the following provisions.

   A). 28 U.S.C. 1343(a)(3), which grants jurisdiction to the district court of any action to recover damages or to secure equitable or other relief under an Act of Congress providing of Civil Rights.

   B). 28 U.S.C 1331, which authorizes original jurisdiction to the district court of all Civil Actions arising under the Constitution laws or treaties of the United States.

(2). All listed Defendants are Federal Bureau of Prisons employees. As such the Court has Jurisdiction over the Defendants.

(3). Venue is Proper in this District Court.

## Relevant Statuatory

(4) The Rehabilitation Act of 1973 protects individuals who have a physical or mental impairment.

(5) Under the Rehabilitation Act of 1973, discrimination includes, among other things, the failure to make reasonable accomodations to the known physical or mental limitations of an otherwise qualified individual.

## Parties

(6). Arya Milan Pernell ("ARYA") is a Transgender male to female prisoner and has been in the care and custody of the Federal Bureau of Prisons at all times alleged in this complaint. Arya is the Plaintiff

11-(7). Andre Matevousian is the FBOP North Central Regional Director and is generally charged with responding to inmate Appeals submitted in his region and providing remedies when appropriate. He has also Participated as a Transgender Review Team member of the Transgender Executive Council. He is sued in his individual and official capacity both jointly and severally.

(8). Colette Peters is the "FBOP" director and is charged with implementing policies within the "FBOP" and general oversight of FBOP operations. Defendant Peters is sued in her individual and official capacity both jointly and severally.

8-(9.) Warden Dan Sproul is the current Warden at USP Marion and is employed by the "FBOP". Defendant Sproul is charged with ensuring the orderly running and safety of USP Marion. Defendant Sproul is sued in his official and individual capacity both jointly and severally.

10). Ian Connors is the Administrator for National Inmate Appeals submitted to him and providing Remedy, when appropriate, to said inmates. Defendant Connors is sued in his individual and official capacity, both jointly and severally.

12-(11) Dr. Elizabeth Stahl is the "FBOP" Medical Director and is responsible for providing and authorizing medical care and treatment to inmates in the custody of the F.B.O.P. She is sued in her individual and official capacity both jointly and severally.

12) Brandi Reynolds was a member of the Transgender Executive Council ("TEC") Transgender Review Team ("TRT") "FBOP." She was generally charged with oversight of care to Transgender inmates, gender affirming facility placement, and Recommendations of gender-affirming medical care. She is sued in her official and individual capacity both jointly and severally.

13). Jeffrey Burkett was a member of the Transgender Executive Council "T.R.T." "F.B.O.P." He was generally charged with oversight of care to Transgender ("TG") inmates, gender affirming facility placement, and recommendations of gender affirming medical care. She is sued in his individual and official capacity both jointly and severally.

14). Donald Lewis was a member of the "TEC" "TRT" "F.B.O.P." He was generally charged with oversight of care to "TG" inmates, gender-affirming facility placement, and recommendation of gender-affirming medical care. He is sued in his individual and official capacity both jointly and severally.

15). Shannon Robbins was a member of the "TEC" "TRT" "FBOP". SHE was generally charged with oversight of care to TG inmates, gender-affirming facility placement, and recommendations of gender-affirming medical care. She is sued in her individual and official capacity both jointly and severally.

16). Chris Bina was a member of the "TEC" "TRT" "FBOP". She was generally charged with oversight of care to TG inmates, gender-affirming facility placement, and recommendation of gender-affirming medical care to TG inmates. She is sued

in her individual and official capacity both jointly and severally.

17). Linda Geter was a member of the "TEC" "TRT" "FBOP". She is generally charged with the oversight of care to "TG" inmates, gender-affirming facility placement, and gender-affirming medical care to TG inmates. She is sued in her individual and official capacity, both jointly and severally.

18). Alix Mclearen was a member of the TEC, TRT, FBOP. She is generally charged with the oversight of care to TG inmates, gender-affirming facility placement, and gender-affirming medical care to TG inmates. She is sued in her individual and official capacity both jointly and severally.

19). Jared Rardin was a member of the TEC, TRT, FBOP. He is generally charged with oversight of care to TG inmates, gender-affirming facility placement, and gender-affirming medical care to TG inmates. He is sued in his individual and official capacity.

20). Chris Bina was a member of the TEC, TRT, FBOP. She is generally charged with the oversight of care to TG inmates, gender-affirming facility placement, and gender-affirming medical care to TG inmates. She is sued in her individual and official capacity both jointly and severally.

21). Todd Chapman was a member of the TEC, TRT, FBOP. He is generally charged with oversight of care to TG inmates, gender-affirming facility placement, and gender-affirming medical care to TG inmates. He is sued in his individual and official capacity both jointly and severally.

22). Ken Woods was a member of the TEC, TRT, FBOP. He is generally charged with oversight of care to TG inmates, gender-affirming facility placement, and gender-affirming medical care to TG inmates. He is sued in his individual and official capacity both jointly and severally.

23). Kenneth Hyle was a member of the TEC, TRT, FBOP. He is generally charged with oversight of care to TG inmates, gender-affirming facility placement, and gender affirming medical care. He is sued in his individual and official capacity.

(24) Kerri Pistro was a member of the TEC TRT FBOP. She is generally charged with oversight of care to TG inmates, gender-affirming facility placement, and gender-affirming medical care. She is sued in her individual and official capacity both jointly and severally.

(25). John O'brien was a member of the TEC, TRT, FBOP. He is generally charged with oversight of care to TG inmates, gender-affirming facility placement, and gender-affirming medical care. He is sued in his individual and official capacity both jointly and severally.

(26). Corrine Nastro was a member of the TEC, TRT, FBOP. She is generally charged with oversight of care to TG inmates, gender affirming facility placement, and gender-affirming medical care. She is sued in her individual and official capacity, both jointly and severally.

7- (27) John Does #1-7 are any members of the TEC that remain unknown to ARYA but whom are involved in the ongoing denial of medical that this claim centers around. They are sued in their individual and official capacities both jointly and severally.

Facts Generally

13- (28) Arya has identified herself to FBOP officials as a Transgender female since 2016. This was during her first 365 days confined in the F.B.O.P. On 1 Sep. 2016 she was entered in her medical file as Transgender. See Ex. (H3)(H8)

14- (29) In April of 2019 ARYA was diagnosed with Gender Dysphoria in adolescents and adults (GD) See Ex. (H4)

15- (30) In August of 2019, Arya began her medical transition by undergoing Female Hormone Therapy.

16- (31) ARYA has been recognized by both her peers and FBOP staff as being female. ARYA is documented to have a pronounced female appearance. Due to

hormone therapy, Arya has developed noticeable secondary female sex characteristics. Arya wears make-up, wears female undergarments, and lives as a female as much as possible in her environment.

See Ex. I6 I7 I8 I9 I10 I11 I12 I13 I14 I15

17 — (32) Arya has consolidated her gender identity and reached hormone "goal" level according to staff in Sept of 2020.

Confinement And Medical treatment.

Original #19-22 removed.

23-25-(33). In July of 2020 Arya attempted self castration using a safety razor. The self-castration occurred after Arya had asked about voluntary castration and emailed she "could no longer live with male genetelia". Arya was hospitalized. See Ex.(H17)(H18)

26-(34). During the above event Arya stated to medical personel that she felt she either had to kill herself or attempt self-surgery.

27-(35). During Arya's hospital stay, she was evaluated by a Dr. Harim Ghobrial-Sedky MD, at Cooper University Medical hospital

28-(36). It was Recommended by Dr. Ghobrial-Sedky in his report and relayed to an unknown federal liason and placed in Arya's medical file that ARYA, "first and foremost needs assistance with resources and a plan for Gender reassignment surgery" See Ex.(H5)

29 — (37) The previous paragraphs #33, 34, 35, 36 occurred prior to ARYA's first "TEC" review concerning ARYA's request for gender confirmation surgeries. The members of the TEC Brandi Reynolds, Donald Lewis, Jeffrey Burk Linda Geter, Shannon Robbins, Alix Mclearen, Chris Bina, Jared Rardin Todd Chapman, Ken woods, Kenneth Hyle, Kerri Pistro, John O'brien, and Corcine Nastro, TEC John Does #1-7, FBOP medical Director Dr. Elizabeth Stahl, FBOP Director Colette Peters, Andre Matevousian, Ian Connors, Dan Sproul failed to act adequately to prevent ARYA's suicide Attempt following said "TEC" reviews. The defendants have since failed to

provide Arya with any clear, definitive timeline or answer to ARYA's request for "GCS" or provide any change, adjustment, or advancement to ARYA's medical treatment of her Gender Dysphoria.

30 — (38) ARYA was transferred to USP Marion on arrival October 7th, 2021 ARYA was admitted to the SOTP-R per "TEC" recommendation. Following several TEC reviews of ARYA, warnings from FCI Fairton staff, and ARYA's placement in FBOP sentry as a "Psych Alert" due to previous self-harm.

31 — (39) After arriving at USP Marion ARYA attempted to commit suicide by hanging herself in her cell, tying a bed sheet arround her neck. Another inmate found ARYA in her cell and saved ARYA's life. See Ex. (H16)

32 — (40) In ARYA's totality of being in the FBOP, ARYA has been the subject of numerous suicide risk assessments with all but one known assessment being related to her documented struggles with "GD".

33 — (41) The TEC, in its reviews of ARYA, have been notified by multiple institutions wardens and institution staff witnessess as to the extent of ARYA's difficulty coping with her Gender Dysphoria.
See Ex. (E1) (E3)(E4)(E5)(E6)(E7)(E8)(E9)(E10)(E11)(E18)

(42) IN 2024 ARYA completed the TEC recommended "SOTP-R" program as directed. As of August 2024 there has still been no medical change or advancement for ARYA's medical care of her Gender Dysphoria, despite Aryas enrollment is SOTP-R being billed as part of a "path to reassignment surgery. See Ex (H22)

Requests for Gender Confirmation Surgeries.

34 — (43) The first meeting (Known to Arya) conducted by the "TEC" in relation to Aryas request for Gender Confirmation Surgieries (GCS)" was conducted on March 6, 2021. Multiple additional meetings have been conducted by the "TEC" to include meetings on April 19, 2021, July 12 2021, April 11 2022, Jan 10 2022

November 14 2022, and any meetings in 2023 or 2024. All meetings were a result of ARYA's request for "GCS" and institution staff memo's documenting ARYA's history of her "GD", and the consistency of her gender identity consolidation as well as her progress through her transition.

(44) ARYA has requested a video conference with the "TEC" on multiple occassions. ARYA has never been granted request for video conference, she's never been allowed to be present for any "TEC" evaluation, and she has never knowingly met with any member of the "TEC" charged with evaluating her request for "GCS". See Ex.(E15)(E16)(E17)

35 — (45) After "TEC" meetings on March 8 2021 and April 19 2021, an initial recommendation was made by the "TEC" finding ARYA appropriate for transfer to a low security male facility in preperation for GCS and eventual transfer to a female facility. The "TEC" has provided that these transfers were part of the TEC's requirements for GCS to be provided. ARYA has consistantly requested GCS before transfer to a female facility.

36 — (46) ARYA was never transferred to a low security institution due to the TEC recanting their initial recommendation. The TEC claimed the recanting was due to a detainer lodged against ARYA five years prior in 2016. The detainer is the result of an already decided case that carries a sentence that runs concurrent to ARYA's current sentence for which she is confined in the FBOP. There is no way for ARYA to resolve the detainer any further than the detainers conclusion as is.

39 — (47) ARYA's previous case manager at USP Tucson years before had already removed the detainer custody points from her custody points sheet. See Ex.(I1)(I2)(I3)(I4)(I5)

40-41 (48) The TEC met in December of 2019 and approved ARYA's lesser security transfer from a high custody USP Tucson to a medium custody FCI Fairton. The TEC did not elect to readd ARYA's detainer points at that time. Arya was transferred from USP Tucson to FCI Fairton, NJ in January of 2020.

42- (49) After ARYA's request for GCS and a "recommendation she obtain another lesser security transfer pursuant to medical treatment, the TEC declared Arya's detainer prevented ARYA from obtaining a lesser security transfer that would have advanced her medical treatment. See Ex. I1, I2, I3, I4, AR25, AR26

37- (50) The TEC then recommended ARYA enroll in "SOTP-R" and work with her unit team to resolve her detainer before the TEC would readdress her requests for GCS. See Ex. (A26)

38- (51) ARYA, of her own accord had already placed herself on the waiting list for SOTP-R in 2017 and she had previously been designated to participate in SOTP-R in March of 2020 prior to any TEC evaluation for her GCS requests.

(52) ARYA was transferred to USP Marion, IL for inclusion in "SOTP-R in October of 2021. ARYA Completed SOTP-R Nearly 3 years later in March of 2024.

(53) After a nearly 3 year treatment program "recommended" by the TEC for progress towards surgery, ARYA was transferred to FCI Marianna, FL and has still not recieved any change, advancement, plan, or procedure to ARYA's Recommend needs for GCS.

43- (54) ARYA, after being transferred to USP Marion, IL for inclusion in SOTP-R, appealed her GCS denial to Defendant Sproul. Defendant

Sproul referred ARYA's request for GCS to the TEC but declined to refer ARYA's request for permanent facial hair removal stating permanent hair removal was "purely cosmetic".

44 (55) ARYA then appealed her GCS/gender affirming procedures request to Defendant Matevousian, the North Central Regional Director to the FBOP. In ARYA's appeal and throughout ARYA's appeals she stated that denial of medical treatment has provoked more thoughts of self-castration and suicide. ARYA also reiterated that the TEC is already aware.

45 (56) In Defendant Matevousian's response it was stated that "you have not been denied surgery or electrolysis" and "we shall defer diagnostic and treatment interventions to the Health Services at the 'local level'". Health services at the "local level" at multiple institutions have already concurred with ARYA's appropriateness for GCS.

46 (57) ARYA then followed up with Health services at the local level. ARYA was instructed that Health services would continue current plan unless instructed otherwise. See Ex. H6

47 (58) Per FBOP Policy Manual OPI RSD/WASB number 5200.08. The medical Director of the FBOP, Dr Elizabeth Stahl-Defendant, is the only body who can ultimately approve GCS after a review from the institutions Warden and the TEC.

48 (59) In the nearly four years since the first memo was submitted to the TEC by FCI Fairton Warden requesting GCS and procedures for ARYA, ARYA's requests for such procedures have never been definitively answered by the TEC Defendants, the FBOP Medical director Dr. Elizabeth Stahl, Defendant Connors, or Defendant

Matevousian. Instead ARYA has been directed to or loop-holed in departments whom have no authority to physically provide, grant, or deny such requests. This "Merry-go-round" has been documented as leading to a decline or worsening of ARYA's Gender Dysphoria symptoms. See Ex (H10)(H12)

49 —— (60) On 16 November 2022, ARYA's final Administrative Remedy appeal, pursuant to the PLRA, was answered by Defendant Connors. In Defendant Connors's response he "concurred with the previous recommendations of Defendant Matevousian and Defendant Sproul. Additionally, Defendant Connors response claimed that the response was in response to ARYA's "central office appeal wherein ARYA requested transfer to a female facility". ARYA in fact did not request said transfer anywhere in ARYA's appeal.

50 —— (61) ARYA asserted in her central office appeal that "she was in a male facility when she began hormone therapy to treat her Gender Dysphoria" and she questioned why "her still being in a male facility suddenly prevented any further treatment of her Gender Dysphoria. See Ex.(AR29)(AR30)(AR31)

51 —— (62) Defendant Connors then wrote that "one factor that is considered by the TEC with regard to the process of obtaining gender-affirming surgery is that there has been significant progress towards transition as demonstrated by your medical and mental health history." Multiple Wardens, medical staff, and psychology staff have documented ARYA's significant progress. See Ex. E1, E2, E6, E7, E8, E9, E10, E11

52 —— (63) ARYA has been medically documented that her hormones have been at "goal" since September 2020. No change has occurred in ARYA's

Hormone Therapy Dosage since February 2020. Arya is documented as having a Feminine appearance that is "quite pronounced". Arya has been documented as developed Breasts. No medical provider has stated that there are any other options short of GCS in treating ARYA's "GD".

53. (64) ARYA sent an electronic cop-out to local Health services administrator Ms. Harbinsons at USP Marion on 30 December 2022. Among other things, ARYA asked Health services if they were following current central office and regional guidance, for ARYA's treatment plans. Ms. Harbinsons replied on 4 January 2023 that "Yes, you are correct, Health services looks to the TEC for guidance".

## Count I
Deliberate Indifference to a Serious Medical Need.

54. (65) ARYA hereby restates each and every above paragraph and incorporates them by reference as though fully stated here as part of Count I of this complaint.

55. (66) ARYA has demonstrated through medical and mental health history, that her GD is a serious medical condition.

56. (67) ARYA and FBOP staff have conveyed the seriousness of her medical condition to TEC Defendants, John Does #1-7, Defendant Sproul, Defendant Connors, and Defendant Matevousian.

57. (68) The above named defendants, despite this, have constructively denied ARYA's GCS and electralysis, by giving ambiguous responses placing ARYA on a metaphorical "Merry-go-round" directing her to other departments within the F.B.O.P.

58. (69) Deliberately Indifferent to ARYA's medical needs, TEC Defendants Brandi Reynolds, Jeffrey Burkett

Donald Lewis, Linda Geter, Shannon Robbins, Alix Mclearen, Chris Bina, Jared Rardin, Todd Chapman, Ken Woods, Kenneth Hyle, Kerri Pistro, John O'brien, and Corrine Nastro John Does #1-7, Defendant Sproul, Connors, and Defendant Matevousian in action exposed ARYA to more emotional trauma and anguish. Without GCS and Electrolysis ARYA has demonstrated through her previous actions that having male genitalia, instead of her gender identified anatomy, pushes ARYA to such a state wherein she feels the need to self-castrate herself and/or kill herself. ARYA's Gender Dysphoria is an objectively serious medical condition and the named defendants have intentionally failed to adequately treat her condition.

59 — (70). Additionally, Dr. Elizabeth Stahl the FBOP Medical Director, named TEC members, John Does #1-7, Defendant Sproul, Connors, Matevousian, and have been indifferent to ARYA's medical needs by failing to make adequate medical treatment available; Gender confirmation surgeries and facial hair electrolysis.

60 — (71) The actions and omissions of above named TEC members, John Does #1-7, Defendant Sproul, Defendant Connors, Defendant Matevousian, Dr. Elizabeth Stahl, -failing to provide ARYA with GCS's, Removal of facial and pubic hair, and or advance ARYA's medical care for her GD constitutes deliberate indifference to ARYA's serious medical needs in violation of the 8th Amendment to the United States Constitution.

61 — (72) ARYA has been mentally, emotionally, psychologically, and physically injured as a result of the above named Defendants Action.

62 — (73) ARYA Requests the relief stated below.

## Count 4
Failure to accomadate under Rehabilitation Act of 1973. Discrimination

72 — (74) ARYA restates each and every paragraph above and incorporates them by reference as though fully stated here as part of Count 4 of this complaint.

73 — (75) ARYA is a qualified individual with a disability for the purposes of the Rehabilitation Act. ARYA's GD substantially impacts her ability to function in her daily life and environment.

74 — (76) The Director of the FBOP Defendant Peters discriminated against ARYA, when she failed, among other actions, to provide ARYA with reasonable accomodations for her disability by failing to make available and or provide GCS and hair removals in accordance with ARYA's Gender Dysphoria.

75 — (77) The (WPATH) or World Professional Association of Transgender Health has published guidelines for incarcerated individuals since 1998.

77 — (78) These medical standards of care have been available throughout Defendant Peters tenure as FBOP director. Despite this, ARYA has not been afforded these accomodations for her GD. Defendant Peters inaction in accomodating an objectively serious condition has led to ARYA experiencing injury as a result.

78 — (79) The discrimination under the Rehabilitation Act of 1973 by Defendant Peters for failing to provide accomodations for ARYA's disability is in violation of the provisions set forth under the said Act of Congress.

79 — (80) As a result ARYA was damaged and injured by defendant Peters conduct.

80 — (81) ARYA requests the relief stated below.

### Exhaustion of Administrative Remedies

81 — (82) ARYA has exhausted all administrative remedies with respect to all claims set forth in this complaint pursuant to PLRA.

Litigation history

82 — (83) ARYA has no outstanding civil cases in federal court or in the state court system. Nor has ARYA had any strikes imposed upon her for civil litigation. ARYA has only one filing where ARYA sent a letter to the court which, out of an "abundance of caution" was filed, but was later dismissed without prejudice with the clerk of the court sending ARYA instructions on how to file a civil case.

Wherefore the Plaintiff Arya Milan Pernell requests of the Court the following relief:

A). Issue a declaratory judgement stating that
(A1) The Acts and omissions of Defendants D. Sproul, Ian Connors, Andre Matevousian, Dr. Elizabeth Stahl, Brandi Reynolds, Donald Lewis, Jeffrey Burkett, Linda Geter, Shannon Robbins, Alix Mclearen, Chris Bina, Jared Rardin, Todd Chapman, Ken Woods, Kenneth Hyle, Kerri Pistro, John O'Brien, Corrine Nastro, and John Does #1-7 violated, and continue to violate, Plaintiff Arya Milan Pernell's rights under the 8th Amendment to the United States Constitution and constituted deliberate indifference to a serious medical need.

(A2) The Acts and omissions of Defendant Peters, failing to provide Plaintiff with a reasonable accomadation for ARYA's Gender Dysphoria violated and continues to violate the Rehabilitation Act of 1973.

B). Issue an injuction ordering Defendant Peters, Dr. Elizabeth Stahl or their agents to:
(B1) Immediately arrange to have ARYA emergent medical GD be treated with recommeded Gender Confirmation Surgies also to include vagino plasty, Labia plasty, and other anatomical surgeries

needed to fully medically transition her as much as much as medically possible to matching female anatomy and vaginal function. This should be in accordance with Medical Standards of Care such as WPATH or American Medical Association.

(B2) ARYA be provided Breast Augmentation

(B3) ARYA to be provided with facial femization surgeries (i.e.) facial hair removal.

(B4) immediately conduct all gender-affirming transfers required for surgical care; with consideration to ARYA's request to have sex-reassignment anatomical surger done prior to transferring to a female facility, if possible.

(C) Award both nominal and punitive damages to the highest or fullest amount both jointly and severally against all Defendants.

(D) Any such other relief it appears the Plaintiff, Arya Pernell is entitled to

(E). F.B.O.P policy change to allow people to access Gender-affirming surgeries prior to transferring to a gender-affirming facility.

ARYA Milan Pernell does hereby state a claim

Verification

I, ARYA Milan Pernell, the undersigned, declare under penalty of perjury pursuant to 28 U.S.C. 1746 declare that the contents within this complaint are true and correct.

*Arya Milan Pernell*
/Arya Milan Pernell
9 Sep. 2024